## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. 24-20088-CR-GAYLES/GOODMAN

UNITED STATES OF AMERICA,

      Plaintiff,

v.

CLAYTON L MANHERTZ,
ODANE HOLNESS,
LEONARD PHILLIPS,
BURTLEY W. AGUSTS,
FABIO ANDRES MORAN-GUERRERO,
JOSE LUIS MARCANO-ROMERO,

      Defendants.

_____/

### REPORT AND RECOMMENDATIONS ON
### DEFENDANTS' JOINT MOTION TO DISMISS

Defendants Clayton L. Manhertz, Odane Holness, Leonard Phillips, Burtley W. Agusts, Fabio Andres Moran-Guerro, and Jose Luis Marcano-Romero (collectively "Defendants") jointly filed the at-issue motion to dismiss. [ECF No. 40 ("Motion")]. United States District Judge Darrin P. Gayles referred the Motion to the Undersigned for a report and recommendations. [ECF No. 41]. The United States filed a response, and Defendants filed a reply. [ECF Nos. 44; 48].

In their Motion, Defendants argue that the Court should dismiss the Indictment for lack of jurisdiction because the Government unconstitutionally applied the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. § 70501. [ECF No. 40, p. 1]. More specifically, Defendants argue that the Court lacks jurisdiction because the interdiction occurred approximately 160 nautical miles south of Haiti -- in Haiti's **Exclusive Economic Zone** ("EEZ"). This zone, they contend, is not the "high seas," which means that the law's application here is unlawful.

Despite Defendants' arguments, the Eleventh Circuit has recently ruled that any area outside of a foreign nation's twelve nautical miles (*i.e.,* "territorial waters") is deemed international waters and **high seas** -- and therefore within Congress's Felonies Committed on the High Seas Clause powers. *See United States v. Alfonso*, 104 F.4th 815 (11th Cir. 2024). Defendants acknowledge this reality, and candidly state that *Alfonso* came to a contrary conclusion. [ECF No. 40, p. 3]. The Motion explains that they "therefore raise and *preserve* this argument for further review." *Id*.[1] (emphasis added).

For the reasons stated below, the Undersigned **respectfully recommends** that Judge Gayles **deny** Defendants' Motion.

---

[1]      Defendants noted that the *Alfonso* appellants moved for rehearing *en banc* (with panel rehearing), which "will automatically stay the mandate." [ECF No. 40, p. 3]. But the Eleventh Circuit denied the appellants petition for rehearing. [ECF No. 49, p. 1]. "On the same day, Mr. Alfonso filed an unopposed motion to stay the mandate." *Id*. However, that motion to stay the mandate was denied. *United States v. Alfonso*, Case No. 22-10576, ECF No. 76. Therefore, *Alfonso* remains as undisturbed binding precedent.

## I.    Factual Background

The facts are not in dispute, and they are straightforward:

On or about February 28, 2024, a maritime patrol aircraft detected a Go-Fast Vessel ("GFV") approximately 160 nautical miles south of Haiti. The parties expressly agree, in a Joint Notice [ECF No. 43], that "the interdiction occurred outside the twelve nautical miles of Haiti's territorial waters but within the [EEZ] of Haiti," which means they also agree that an evidentiary hearing (to pinpoint the specific location of the interdiction) is not required. *Id.*

The GFV had six (6) individuals on board, two (2) outboard engines, packages on deck, and displayed no indicia of nationality. The USS LEYTE GULF, which was in the area with a Law Enforcement Detachment ("LEDET") on board, was diverted to interdict and investigate. USCG District 7 assumed tactical control over the LEYTE GULF and granted a Statement of No Objection to conduct a Right of Visit boarding, including the use of airborne use of force for a Right of Visit boarding to stop a non-compliant vessel.

The LEYTE GULF launched its Over the Horizon ("OTH") small boat and helicopter to interdict. The helicopter crew observed the individuals on board the GFV begin to jettison packages. The GFV refused to stop, causing the USCG to fire warning shots, which were ineffective. The USCG then employed disabling fire, which were effective. The OTH arrived on scene and gained positive control of the GFV.

3

Defendants identified themselves as the six individuals on board. The United States Coast Guard ("USCG") boarding team asked those on board to identify the master or person in charge of the vessel, but all six refused to provide the answer. When asked if anyone wished to make a claim of nationality for the vessel, all six refused to make a claim for the vessel. Consequently, the vessel was treated as a vessel without nationality, and therefore subject to the jurisdiction of the United States. A full law enforcement boarding followed.

The boarding team recovered a total of fifteen (15) bales on deck; five (5) bales were retrieved from the water. A field test of the bales' contents proved positive for cocaine. The approximate at sea weight of the cocaine was 600 kilograms. The six individuals, along with the bales of cocaine, were transferred to the USS LEYTE GULF.

On March 12, 2024, a Federal Grand Jury sitting in the Southern District of Florida returned a two count Indictment charging Defendants with conspiracy to possess, and possession with intent to distribute, a controlled substance while on board a vessel subject to the jurisdiction of the United States [ECF No. 1].

Defendants arrived in the Southern District of Florida on March 14, 2024 and made their Initial Appearance the following day.

## II.     Applicable Legal Principles and Analysis

The MDLEA prohibits intentional possession of a controlled substance with intent to distribute while onboard a covered vessel. 46 U.S.C. § 70503(a)(1). The MDLEA is constitutional as applied to vessels on the "high seas" under the Felonies Clause. *United States v. Cabezas-Montano*, 949 F.3d 567, 587 (11th Cir. 2020); *see also* U.S. Const. art. I, § 8, cl. 10; *United States v. Bellaizac-Hurtado*, 700 F.3d 1245, 1248 (11th Cir. 2012).

Defendants argue they were not apprehended on the "high seas" because they were in Haiti's EEZ. [ECF No. 40, p. 1]. They contend that the phrase "high seas" is limited by customary international law, and that under customary international law, EEZ waters are not in the high seas. *Id*. at 10. However, the Eleventh Circuit rejected these arguments and recently ruled in *Alfonso* that an "EEZ is part of the 'high seas' and thus within Congress's authority under the Felonies Clause." *Alfonso*, 104 F.4th at 815.

Defendants additionally argue that the *Alfonso* Court "citing [*New York State Rifle & Pistol Ass'n Inc. v. Bruen*, 597 U.S. 1, 25–26 (2022)], looked to the meaning of the high seas at the time the Constitution was ratified. But the Supreme Court has since clarified that *Bruen* was 'not meant to suggest a law trapped in amber.'" [ECF No. 40, p. 12 (quoting *United States v. Rahimi*, 144 S. Ct. 1889, 1897 (2024))]. Defendants state that "[t]he relevant question here is whether the principles that defined the "high seas" **at the Founding** apply to the EEZs—not whether the exact location of the waters was considered the high seas at the time." *Id*. (emphasis added).

In *Rahimi*, the Supreme Court addressed whether a statute was facially constitutional under the Second Amendment. In clarifying its holding in *Bruen*, it explained:

> In *Heller*, our inquiry into the scope of the right began with "constitutional text and history." *Bruen*, 597 U.S., at 22, 142 S. Ct. 2111. In *Bruen*, we directed courts to examine our "historical tradition of firearm regulation" to help delineate the contours of the right. *Id.*, at 17, 142 S. Ct. 2111. We explained that if a challenged regulation fits within that tradition, it is lawful under the Second Amendment. We also clarified that when the Government regulates arms-bearing conduct, as when the Government regulates other constitutional rights, it bears the burden to "justify its regulation." *Id.*, at 24, 142 S. Ct. 2111.
>
> Nevertheless, some courts have misunderstood the methodology of our recent Second Amendment cases. These precedents were not meant to suggest a law trapped in amber. As we explained in *Heller*, for example, the reach of the Second Amendment is not limited only to those arms that were in existence at the founding. 554 U.S. at 582, 128 S.Ct. 2783. Rather, it "extends, prima facie, to all instruments that constitute bearable arms, even those that were not [yet] in existence." *Ibid.* By that same logic, the Second Amendment permits more than just those regulations identical to ones that could be found in 1791. Holding otherwise would be as mistaken as applying the protections of the right only to muskets and sabers.
>
> As we explained in *Bruen*, the appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition. 597 U.S. at 26–31, 142 S. Ct. 2111. A court must ascertain whether the new law is "relevantly similar" to laws that our tradition is understood to permit, "apply[ing] faithfully the balance struck by the founding generation to modern circumstances." *Id.*, at 29, 142 S. Ct. 2111. Discerning and developing the law in this way is "a commonplace task for any lawyer or judge." *Id.*, at 28, 142 S. Ct. 2111.
>
> Why and how the regulation burdens the right are central to this inquiry. *Id.*, at 29, 142 S.Ct. 2111. For example, if laws at the founding regulated firearm use to address particular problems, that will be a strong indicator that contemporary laws imposing similar restrictions for similar reasons

> fall within a permissible category of regulations. Even when a law regulates arms-bearing for a permissible reason, though, it may not be compatible with the right if it does so to an extent beyond what was done at the founding. And when a challenged regulation does not precisely match its historical precursors, "it still may be analogous enough to pass constitutional muster." *Id*., at 30, 142 S.Ct. 2111. The law must comport with the principles underlying the Second Amendment, but it need not be a "dead ringer" or a "historical twin." *Ibid*. (emphasis deleted).

*Rahimi*, 144 S. Ct. at 1897–98.

But the *Alfonso* Court **did** address whether the principles that defined the "high seas" at the Founding apply to the EEZ and, in doing so, considered customary international law:

> **Nothing about the modern EEZ as defined by customary international law disturbs in any way the Founding era concept of the term "high seas" that informed the original meaning of the Felonies Clause.** Accordingly, we conclude, as a matter of first impression, that the EEZ is part of the "high seas" for purposes of the Felonies Clause in Article I of the Constitution.

104 F.4th at 823 (emphasis added).

Therefore, Defendants' arguments are foreclosed by binding precedent. *See United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008) (explaining that under the prior panel precedent rule, "a prior panel's holding is binding on all subsequent panels unless and until it is overruled or undermined to the point of abrogation by the Supreme Court or by this court sitting *en banc*").

## III.   Conclusion

The Undersigned **respectfully recommends** that Judge Gayles **deny** Defendants' Joint Motion to Dismiss [ECF No.40].

IV.     **Objections**

The parties shall have **three (3) days**[2] to file written objections, if any, with Judge Gayles and an additional **three (3) days** to file a response to the other party's objection. Failure to file objections timely shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY RECOMMENDED** in Chambers, in Miami, Florida, on October 21, 2024.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Darrin P. Gayles
All Counsel of Record

---

[2]     The objection and response deadlines have been shortened because of the upcoming trial date and because the parties were previously aware of *Alfonso's* binding precedent, including the relevant denial of its rehearing or stay motions.